NEWTON GRAIN COMPANY, Respondent, v. PIERCE, Appellant.

St. Louis Court of Appeals, April 12, 1904.

**STATUTE OF FRAUDS:** Original Undertaking. Where the evidence showed that plaintiff refused to sell merchandise to a customer who then brought defendant with him, to plaintiff, and defendant said he would "stand good for it or pay for it" and afterwards made a payment on the account, although the merchandise was charged to the customer alone, as plaintiff explained for convenience, the finding of the trial court that the statute of frauds could not avail as a defense, was proper.

Appeal from Greene Circuit Court.—*Hon. W. D. Hubbard,* Special Judge.

AFFIRMED.

*J. T. White* for appellant.

On the showing of plaintiff, the defendant is not liable under the statute of frauds. To constitute an original obligation on part of one, when the goods are delivered to another, it must be shown that credit was given solely upon the responsibility of the person making the promise. Rottman v. Fix, 25 Mo. App. 573; Price v. Chicago, 40 Mo. App. 194; Osborn v. Emery, 51 Mo. App. 413; Gill v. Reed, 55 Mo. App. 248; Rottmann v. Pohlmann, 28 Mo. App. 407; Bugbee v. Kendricken, 130 Mass. 437; Swift v. Pierce, 13 Allen 136.

*M. C. Smith* for respondent.

Where the main purpose of the defendant in making an oral promise to plaintiff to become responsible for feed and supplies furnished W. G. Dennis, was to

serve or promote some interest or purpose of defendant, such promise of defendant will be treated as original, and primarily liable with W. G. Dennis for the payment to plaintiff for the supplies sold and delivered. Sewer Pipe Company v. Smith, 36 Mo. App. 626; Mackey v. Smith, 28 Pac. 976; Ames v. Foster, 106 Mass. 400; Brandt on Suretyship and Guaranty, pp. 71, 72, sec. 56.

## STATEMENT.

As stating his cause of action, plaintiff filed the following complaint (omitting caption) before a justice of the peace:

"The plaintiff says it is a corporation duly organized and existing under the laws of the State of Missouri, and that said defendant, N. J. Pierce, is indebted to plaintiff in the sum of sixty-six and 96-100 dollars, balance due on account for goods, wares and merchandise sold and delivered to W. G. Dennis, at the special instance and request of said defendant, N. J. Pierce. Said goods and merchandise were sold and delivered at various times between August 1, 1902, and March 15, 1903, an itemized account of which, marked exhibit 'A' is herewith filed.

"That all of said goods, wares and merchandise were sold and delivered to said W. G. Dennis, solely upon the credit of said defendant, and upon the promise and assurance of defendant, N. J. Pierce, that he would pay the plaintiff for the same."

The account filed with the complaint, was not controverted.

The cause was appealed to the Greene circuit court where, on a trial anew, the issues were submitted to Hon. W. D. Hubbard, special judge, who, after hearing the evidence made the following finding of the facts:

"The court finds that one Pierce, son of defendant, N. J. Pierce, had a contract to carry United States mails

between the postoffice and railroad stations in the city of Springfield, Missouri, and that defendant was on the bond of his son for the faithful discharge of his contract. That defendant's son abandoned the contract, and defendant as bondsman, employed W. G. Dennis to carry out the contract of his son, and furnihed Dennis with some horses and vehicles to be used in this business.

"That W. G. Dennis, requiring feed for the teams in this service, went to plaintiff, Newton Grain Company, to procure same. The court finds that W. G. Dennis was without means to pay cash for the feed, and that plaintiff was unwilling to extend to him credit unless some one would be responsible for such feed.

"The court further finds that thereupon and prior to the sale of the goods sued for in this case, W. G. Dennis brought into the store of plaintiff, the defendant N. J. Pierce, and that defendant made an agreement with plaintiff, that plaintiff should furnish feed and merchandise to W. G. Dennis, and defendant would be responsible with Dennis for the payment of same, and that the feed and merchandise so furnished was charged upon the books of plaintiff to W. G. Dennis, but the said charges were made by plaintiff for the convenience in keeping its books and accounts.

"The court further finds that W. G. Dennis and N. J. Pierce were joint purchasers of said feed and merchandise and both parties are primarily liable to plaintiff for payment of the same.

"The court further finds there is due plaintiff on said account from defendant, the sum of $66.96 with interest thereon at six per cent per annum from August 11, 1903, the date of the institution of this action."

Defendant objected to the finding of facts, which objections were overruled and the court gave judgment for plaintiff for $67.63.

BLAND, P. J. (after stating the facts).—The evidence shows that plaintiff refused to sell Dennis feed on his own account, and in order to procure feed on credit, Dennis hunted up Pierce and the two went to plaintiff's place of business; that Pierce said to plaintiff's manager for him to let Dennis have feed and he would "stand good for it or pay for it;" that afterwards he made one or more payments to plaintiff for feed furnished Dennis; that, as found by the court trying the case, plaintiff charged the feed to the account of Dennis only. The explanation for thus keeping the account, as given by plaintiff, is that it was done for convenience and to prevent confusion. Plaintiff's evidence shows that it would not have sold Dennis the feed but for the promise of Pierce to stand good for it or see that it was paid for. The evidence shows that the pay from the government, for the services rendered by Dennis under contract with Pierce, came in the form of checks to Pierce, who was under bond to the postoffice department for the performance of the services which Dennis was rendering, and that he and Dennis communicated the fact that Dennis' pay was coming through him to the plaintiff.

Brandt, in his work on Suretyship and Guaranty, section 56, says: "If two come to a shop, and one buys, and the other, to gain him credit, promises the seller, 'if he does not pay you, I will,' this is a collateral undertaking, and void without writing, by the statute of frauds. But if he says, 'let him have the goods, I will be your paymaster,' or 'I will see you paid,' this is an undertaking as for himself, and he shall be intended to be the very buyer, and the other to act but as his servant."

In Baldwin v. Hiers, 73 Ga. 739, it is said: "Where one, whose son desired to purchase certain goods, agreed with the owner that if he would let the son have such goods, he (the father) would see the debt paid or would

pay it, this was an original and not a collateral undertaking.''

In Cruse v. Foster & Estes, 76 Ga. 723, it is said: ''If the plaintiffs refused to furnish goods to a son on credit, and were informed by the father that, if they would do so, he would see that they were paid, and they thereupon furnished goods to the son and charged them on their books to the father and son merely as a memorandum, to enable them to distinguish this from another individual account of the father, and to show precisely the amount furnished to the son, in the absence of other testimony, this would be sufficient to uphold the contract of the father as an original undertaking.''

In Mackey v. Smith, 28 Pac. 974, the Supreme Court of Oregon said: ''Where plaintiff refuses to furnish any further supplies to a certain person, unless the defendants will become responsible, the parol promise of the defendants to pay for all supplies thereafter delivered is an original undertaking . . . and the fact that the supplies were charged on the books to the person to whom they were delivered is not conclusive that the sale was made upon his credit, but may be explained by showing upon whose credit the sale was in fact made.''

In Kansas City Sewer-Pipe Co. v. Smith, 36 Mo. App. l. c. 625, the Kansas City Court of Appeals says: ''In executing contracts it becomes chiefly a matter of fact or of construction, whether the new promisor in fact assumed the attitude of principal or stood as a mere security for the performance of another.''

The inquiry, ''As to whom it was understood between the parties that the creditor should look for payment in the first instance,'' like any other fact must be answered by the evidence adduced at the trial. The court found that the defendant was bound as an original promisor and that the plaintiff looked to him for payment. There is ample evidence in the record to support this finding. The statute of frauds, relied on by defend-

ant was, therefore, of no avail under the facts as found by the court. The judgment is manifestly for the right party and is affirmed. *Reyburn* and *Goode, JJ.*, concur.